# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5985 | **DATE** | 9/7/2004 |
| **CASE TITLE** | ROSEMARY A. GASSNER vs. INTERNATIONAL BUSINESS MACHINES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants IBM's Motion for Summary Judgment [63-1]. IBM is hereby dismissed as a defendant, and IBM's third-party complaint is dismissed as moot. To preserve scarce judicial resources, the Court strikes without prejudice Rosemary's motion to dismiss the first amended "counterclaim" of third-party defendants [52-1] and the third-party defendants' motion for partial summary judgment [54-1]. Given the facts and issues in this case, the Court, in its discretion to control its own docket, will first rule on Prudential Insurance Co.'s liability before addressing any claims of or against third-party defendants. Prudential's motion for summary judgment is due 9/28/04. Rosemary's response is due 10/19/04 ; Prudential's reply is due 11/2/04.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| ✓ | Notified counsel by telephone. | SEP 0 9 2004 |
| | Docketing to mail notices. | date docketed |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | docketing deputy initials |
| CG | courtroom deputy's initials | date mailed notice |
| | | Date/time received in central Clerk's Office |

Document Number

78

U.S. DISTRICT COURT

2004 SEP -9 AM 11:50

FILED-SDI

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 0 9 2004

| | |
|---|---|
| ROSEMARY A. GASSNER, )<br>Individually, and as Administratrix of )<br>The Estate of PATRICK GASSNER, )<br>Deceased, )<br>   )<br>     Plaintiffs, )<br>v. )<br>   )<br>INTERNATIONAL BUSINESS )<br>MACHINES CORP., a New York Corporation, )<br>and PRUDENTIAL INSURANCE OF AMERICA, )<br>   )<br>     Defendants. )<br>——————————————————— )<br>   )<br>INTERNATIONAL BUSINESS )<br>MACHINES CORP., a New York Corporation, )<br>   )<br>     Third-Party Plaintiff, )<br>   )<br>v. )<br>   )<br>JENNIFER LAURI GASSNER, an individual, )<br>and PATRICK JEFFREY GASSNER, an individual, )<br>   )<br>     Third-Party Defendants. ) | 02 C 5985<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosemary Gassner ("Rosemary") has sued International Business Machines

Corp. ("IBM") for breach of fiduciary duty pursuant to the Employee Retirement and Income

Security Act ("ERISA"), 29 U.S.C. § 1132(a) *et seq.*, as a result of a series of actions that

culminated in the payment of the proceeds of a group life insurance policy held by her husband

and former IBM employee, Patrick C. Gassner, to Patrick's children, Jennifer Gassner

("Jennifer") and Patrick "Jeffrey" Gassner ("Jeffrey"). Before the Court is Defendant IBM's

Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.



## FACTS

The following facts are either undisputed or deemed admitted due to the parties' failure to comply with Local Rule 56.1, which this Court strictly enforces. When Patrick began working for IBM in 1996, he enrolled in IBM's group life insurance and travel accident insurance benefit plans, designating his two children, Jennifer and Jeffrey, as the beneficiaries. (Def.'s LR 56.1(a)(3) ¶ 30.) In September 1998, Patrick was diagnosed with end-term liver disease and stopped actively working for IBM. (*Id.* ¶ 33.) On June 4, 2000, Patrick and Rosemary were married. (*Id.* ¶ 36.) Two days later, on June 6, Patrick called IBM's Human Resources Service Center ("HRSC") and requested a new Designation of Beneficiary Form for his group life insurance and travel accident insurance policies. (*Id.*) The form at issue is for the group life insurance policy in the amount of $265,000. (*Id.*) HRSC sent the new form to Patrick's home on June 7. (*Id.*) The instructions on this form, state, in all capital letters, "INDICATE WHETHER THE DESIGNATION IS FOR IBM GROUP LIFE ONLY, TRAVEL ACCIDENT ONLY, OR BOTH POLICIES." (*Id.* ¶ 40.) The form warns that changes in the designation of the beneficiaries of a policy are "effective when the completed form is received and processed by the HRSC." (*Id.*) The form indicates that such processing entails the successful passage of auditing procedures that include an examination of whether the change indicated on the form is for one policy or for both and the signature of the witness. (*Id.* ¶ 41.) A form that fails this internal audit is returned to the employee. (*Id.*) One that passes is sent on to Prudential, the record keeper for IBM's group life insurance plan. (*Id.* ¶ 61.)

Two months later, in August 2000, Patrick was admitted to the hospital. (*Id.* ¶ 38.) On August 21, Robert S. Bell, an attorney, was called to the hospital and met with Patrick alone to discuss his wishes regarding his estate. (*Id.*) The Gassners gave Bell the Designation of

Beneficiary Form that they had received in June. (*Id.* ¶ 39.) He went back to his office where his staff at least partially filled out the form and returned to the hospital later that same day, and Patrick signed the form. (*Id.*) Having read the instructions on the form, Bell signed it four days later on August 25 and sent it to IBM on August 28. (*Id.* ¶¶ 51, 55.) For reasons which are not clear, on August 22, Rosemary requested a new Designation of Beneficiary Form which was mailed to Patrick's home the following day. (*Id.* ¶¶ 45, 50.)

At any rate, the form that was received by IBM failed to pass the routine internal audit to which all forms are subjected because: (1) Patrick's signature date was unclear, (2) Bell's witness date did not match Patrick's signature date, and (3) there was no box checked indicating the plan for which Patrick was trying to change the beneficiary, *i.e.*, the group life insurance plan, the travel accident plan, or both. (*Id.* ¶ 63.) Accordingly, IBM rejected the form, and it mailed the original rejected form, an audit checklist, and a new form back to Patrick's home on August 29.

Patrick returned home on August 30, and at some point in the following week, he apparently received and viewed the August 29 package from IBM's HRSC. (*Id.* ¶¶ 66, 67.) On three consecutive days beginning August 30, Patrick and Bell discussed what was recorded variously on Bell's time sheets as "review [of] . . . IBM follow-up" and "IBM forms." (*Id.* ¶ 68.) Bell cannot remember what they discussed or whether Patrick told him that the Group Life Insurance plan form had been rejected or whether Patrick wished to send in a new form. (*Id.*) IBM was not contacted by anyone connected with this situation until September 20, when Rosemary called to inform it that on September 12, Patrick had died. (*Id.* ¶ 71.)

At this point, an IBM HRSC employee determined who the beneficiaries were with regard to the plans in which Patrick was a participant. (*Id.* ¶ 73.) In the case of the group life

3

insurance policy, IBM's HRSC requested a copy of the most recent, accepted beneficiary form from Prudential. (*Id.* ¶ 74.) The form on file with Prudential indicated that Jennifer and Jeffrey were the beneficiaries of Patrick's group life insurance policy. (*Id.* ¶ 75.) Rosemary was the beneficiary of record of all of Patrick's other benefits. (*Id.*) On August 21, the following day, IBM's HRSC sent Rosemary a Benefits Statement as well as a letter asking Rosemary to call with any questions she had regarding the statement and provided telephone numbers for this purpose. (*Id.* ¶ 78.) The Benefits Statement itself further stated that before payment could be made, additional information would have to be provided. (*Id.* ¶ 79.)

A month later, on September 22, Rosemary called Bell to tell him that she had received the Benefits Statement. (*Id.* ¶ 80.) Bell's time sheet indicates that he spoke with Rosemary "regarding documents," but he does not remember whether Rosemary instructed him to find out what had happened, as Rosemary claims. (*Id.*) In any case, neither Bell nor Rosemary contacted IBM at that time regarding the Benefits Statement listing Jennifer and Jeffrey as the beneficiaries of their father's group life insurance policy. (*Id.* ¶ 81.) Rosemary claims to have called IBM on numerous occasions, including on or about October 3, to tell IBM that she was the group life insurance beneficiary and that Bell sent IBM a letter on October 11. (*Id.*; Pl's. LR 56.1(b)(3)(A) ¶ 81.)

In the meantime, however, on September 27, Rosemary and Jennifer had met at the Gassners' condo in order to review Patrick's affairs. (Def.'s LR 56.1(a)(3) ¶ 82.) Rosemary told Jennifer that the Benefits Statement was wrong and that she was meant to be the beneficiary of Patrick's group life insurance policy, rather than Jennifer and Jeffrey. (*Id.* ¶ 83.) Nevertheless, Rosemary accompanied Jennifer to the building's office to make copies of the Benefits Statement. (*Id.* ¶ 84.) Jennifer called an HRSC employee responsible for the administration of

4

her father's policies stating that she and her brother were sending the information necessary to receive payment of her father's group life insurance policy, which she did the next day. (*Id.* ¶¶ 87, 90.) Jennifer did not inform IBM of the dispute between herself and Rosemary regarding the intended beneficiary of Patrick's group life insurance policy. (*Id.* ¶ 91.) Jennifer also did not inform Rosemary that she was sending the additional requested information necessary to obtain payment of the benefits to herself and her brother. (*Id.*) On October 2, a day before Rosemary called IBM's HRSC, it received the additional information provided by Jennifer, and in accordance with its procedure, it sent a Proof of Death Statement to Prudential so the group life insurance checks could be processed. (*Id.* ¶ 92.) Thus, at the time that IBM's HRSC sent the requisite information to Prudential in order to release the funds to Jennifer and Jeffrey, it was unaware of a dispute regarding the intended beneficiary of the group life insurance policy. (*Id.* ¶ 95.) Rosemary apparently thought Bell was doing so, but he did not contact the HRSC until October 11. (*Id.*) Rosemary herself contacted the HRSC on the day following its delivery of the information to Prudential releasing the funds to Jennifer and Jeffrey. (*Id.*)

On October 9, Prudential wrote checks to Jennifer and Jeffrey in the amount of $132,481.67 each, the amount each was owed on their father's group life insurance policy. (*Id.* ¶ 110.) Jennifer received her check sometime after October 13 and informed Rosemary of this fact. (*Id.* ¶ 106.) Although Rosemary told Jennifer that the money was supposed to have been hers, she made no effort to block either Jennifer or Jeffrey from spending it. (*Id.* ¶ 109.)

On October 11, Bell sent a letter to IBM asking whether it would be disbursing proceeds from Patrick's group life insurance policy pursuant to the Designation of Beneficiary Form "filed previously with IBM." (*Id.* ¶ 103.) Attached to the letter was the already rejected form. (*Id.*) On October 16, the IBM HRSC employee responsible for the administration of Patrick's

benefits left Bell a message stating that the benefits had already been paid out to Jennifer and Jeffrey and noted that the attached form was invalid because it had not been signed or stamped by IBM, a fact of which Bell was, or should have been, aware. (*Id.* ¶ 108.) Bell does not remember listening to this message, but he admits that he sometimes deletes voice-mail messages without listening to them. (*Id.*) The Court notes here that on the same day Rosemary brought her action against IBM, she also brought a malpractice suit against Bell, alleging that as a result of Bell's failures, the group life insurance policy benefits were mistakenly paid to Jennifer and Jeffrey, rather than Rosemary. (*Id.* ¶ 24.)

## **DISCUSSION**

Rosemary has framed her claim as a breach of fiduciary duty claim. IBM, however, maintains that Rosemary's claim should in fact be cast as a denial of benefits claim and urges this Court to treat it as such. No matter how it is viewed, however, Rosemary's claim fails. The Court will analyze it first as a breach of fiduciary duty claim as Rosemary presented it and then as a denial of benefits claim as IBM advocates.

On a motion for summary judgment, the Court considers all of the moving papers with all reasonable inferences drawn in favor of the non-moving party and all factual disputes resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). To overcome a motion for summary judgment, the non-moving party cannot simply allege the existence of a factual dispute. *Id.* at 248. Instead, the non-moving party must set forth admissible facts which demonstrate that there is a genuine issue of material fact whose resolution requires a trial. *Id.* Summary judgment is appropriate when a reasonable finder of fact could not find in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).

ERISA is a comprehensive statute intended to safeguard the interests of employees and their beneficiaries in pension and welfare benefit plans. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983); *see Mass. Mut'l Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("The floor debate also reveals that the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators and that ERISA was designed to prevent these abuses in the future."). To this end, ERISA mandates duties of loyalty and care for fiduciaries, obligating them to act solely in the interest of the participants and beneficiaries of a plan. 29 U.S.C. § 1104; *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). Accordingly, the statute also establishes liability for any breach of these duties. 29 U.S.C. § 1104; 29 U.S.C. §§ 1132(a)(2), (3). Civil actions for ERISA violations are detailed in 29 U.S.C. § 1132 of the statute. However, claims for breach of fiduciary duty are usually brought under sections 1132(a)(2) and 1132(a)(3). *Benjamin v. Marshal P. Morris, Ltd., Profit Sharing Plan & Trust*, No. 97 C 6714, 1998 U.S. Dist. LEXIS 8358, at *11-12 (N.D. Ill. May 19, 1998).

Section 1132(a)(2) does not contemplate individual recovery. *Id.* at *13. Instead, it provides a remedy to a plaintiff only indirectly in that it authorizes claims brought on behalf of a plan itself. Section 1132(a)(2) is concerned with fiduciary obligations related to a *plan's* financial integrity. *Vanity Corp. v. Howe,* 516 U.S. 489, 512 (1996). Thus, to the extent that a plaintiff seeks individual recovery on a breach of fiduciary duty claim under section 1132(a)(2), such recovery is not permitted. *Russell*, 473 U.S. at 142 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, *and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.*") (emphasis added).

7

Here, Rosemary asks that IBM be ordered to pay *her* $265,000 as compensation for insurance proceeds accrued and unpaid. Because Rosemary is seeking payment to herself, rather than the group life insurance plan as a whole, her breach of fiduciary duty claim fails under section 1132(a)(2).

In contrast, section 1132(a)(3) permits individual recovery. This subsection is one of two "catchall" provisions within section 1132 that provide appropriate equitable relief for any ERISA violation that is not otherwise adequately remedied by any other subsection of section 1132. *Vanity*, 516 U.S. at 512. "[A]ppropriate equitable relief" under section 1132(a)(3) has been limited to traditional equitable remedies such as awarding an injunction or restitution. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). Traditional legal remedies, such as money damages, are not appropriate equitable relief under this subsection. *Id.* The Supreme Court has distinguished between ERISA actions seeking equitable relief and those seeking legal relief, stating: "[N]ot all relief falling under the rubric of restitution is available in equity. . . .[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002).

Defendant argues that Rosemary's breach of fiduciary duty claim under section 1132(a)(3) fails because: (1) IBM did not breach its fiduciary duty; (2) the remedy Rosemary seeks is legal, not equitable; and (3) Rosemary seeks a restoration of particular funds that were never in IBM's possession, and thus restitution is inappropriate. Because the Court holds that Rosemary has failed to create a genuine issue as to a material fact regarding whether IBM breached its fiduciary duty, IBM's second and third arguments need not be addressed.

8

Under ERISA, fiduciaries are not only those named as such by a plan, but also any entity who exercises discretionary control or authority over the plan's management, administration, or assets. *Mertens*, 508 U.S. at 251; 29 U.S.C. § 1102(a); 29 U.S.C. § 1002(21)(A). In addition to requiring a fiduciary to act solely in the interest of the plan participants and beneficiaries, ERISA assigns fiduciaries more detailed duties and responsibilities, including "the proper management, administration, and investment of [plan] assets; the maintenance of proper records; the disclosure of specified information; and the avoidance of conflicts of interest." *Mertens*, 508 U.S. at 251; *see Russell*, 473 U.S. at 142-43; 29 U.S.C. § 1104(a).

Rosemary maintains that IBM breached its fiduciary duty by: (1) rejecting the new Designation of Beneficiary Form; (2) failing to forward notice of this rejection to Bell or to Patrick at his last known residence at Northwestern Memorial Hospital; (3) failing to advise Prudential of the substantially compliant, but ultimately rejected, Designation of Beneficiary Form, advising Prudential to pay the benefit proceeds to Jennifer and Jeffrey instead of Rosemary, and allowing Prudential to disburse the proceeds; and (4) failing to provide plan information when requested. The Court will consider each of these alleged failings both as breach of fiduciary duty claims and denial of benefits claims below.

However, when casting Rosemary's complaint as a denial of benefits claim, the Court must first contend, as a threshold matter, with IBM's argument that Rosemary's claim fails first as a matter of law because she failed to name the Group Life Insurance Plan as a defendant. Generally, in this circuit, the proper defendant in an ERISA suit to recover benefits is a plan itself, not an employer. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996); 29 U.S.C. § 1132(d)(2). An exception to this general rule exists, however, when a plan and an employer are closely intertwined. *See, e.g., Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th

9

Cir. 2001) (stating employer and plan were closely intertwined where pronouns "we" and "our" were used in plan documents and seemed clearly to refer to corporation, not plan; designated agent for legal process was corporation; and plan trustee with whom plaintiff most often communicated used corporate stationary indicating he was Vice President of Human Resources); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (stating employer and plan were closely intertwined where plan documents refer to corporation and plan nearly interchangeably and corporation designated itself as plan's agent for service of process).

Here, certain facts suggest that IBM was not the Plan Administrator. The Plan designates the Manager of Compensation and Benefits Services, Global Human Resources as the Plan Administrator. (IBM Ex. 2, IBM000115.) Additionally, the Plan also states that service of legal process may be made upon the Plan Administrator, rather than IBM. (*Id.*) However, other facts in the case at bar establish that IBM was in fact the Plan Administrator. Despite the Plan's plain statement that the Plan Administrator is the Manager of Compensation and Benefits Services, Global Human Resources, in the same section of the Plan where this statement is made, what appears to be a chart lists the "Plan Trustee(s), Insurer(s), or Administrators" as "IBM Corporation and Prudential Ins. Co. of America." (*Id.* at IBM000118.) Additionally, this section of the Plan lists the address of the Office of the Plan Administrator as "*IBM Human Resources Service Center*, 3808 Six Forks Road, Raleigh, NC 27609." (*Id.* at IBM000115 (emphasis added).) Further, there are instances when the Plan refers to IBM as if it were the Plan Administrator. For example, in a section entitled "Designating a Beneficiary" the Plan states, "If you are in doubt about whom you designated as beneficiary, submit a designation of beneficiary form. The most recent form received *by IBM* will always be used to determine beneficiaries." (*Id.* at IBM000089 (emphasis added).) All communication by the various Gassners and Bell was

directed at IBM's HRSC. Additionally, the Court notes that not only does IBM give short shrift

to its argument that it is not the Plan Administrator in its memorandum in support of its motion

for summary judgment, on the very same page where it makes this argument, it implicitly refers

to IBM as the Plan Administrator. For example, its memorandum states, "The IBM Plan

expressly provides *the 'Plan Administrator* [with the] exclusive authority and discretion to

interpret the terms of the benefits plan described herein. Accordingly, this Court should

determine whether *IBM's* 'denial' of benefits to Rosemary was arbitrary and capricious."

(Def.'s Mem. Supp. Mot. Summ. J. at 7-8. (emphasis added).) Afterwards, the bulk of the brief

is spent demonstrating how IBM's actions were not arbitrary or capricious. While pleadings

may not be enough to support a finding that IBM was the Group Life Insurance plan

administrator, the fact that it refers to itself as the Plan Administrator in at least one instance,

that the address for the Plan Administrator was the IBM Human Resources Service Center, and

that some of the language in the Plan suggests that IBM is the plan administrator are enough to

support such a finding. Rosemary's claim, even if cast as a denial of benefits claim, is thus not

defeated because she failed to name the Group Life Insurance Plan as a defendant.

Instead, Rosemary's claim, framed as a denial of benefits claim, fails because IBM did

not breach its fiduciary duty. Denial of benefits claims brought under section 1132(a)(1)(B) are

reviewed under the arbitrary and capricious standard of review when a benefit plan gives the

administrator or fiduciary discretion in the award or denial of benefits. *Chalmers v. Quaker Oats

Co.*, 61 F.3d 1340, 1343-44 (7th Cir. 1995) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 115 (1989)). The Supreme Court, in announcing this standard of review in *Firestone*,

used as its model trusts law, and as in trusts law, "the more discretion that is conferred upon the

trustee or fiduciary, the more deference the consequent decision is entitled." *Chalmers*, 61 F.3d

at 1344. In the instant case, the benefits manual states that, "The Plan Administrator retains exclusive authority and discretion to interpret the terms of the benefits plans described herein." (Def.'s Ex. 2, Summary Plan Description, IBM 000064.) Accordingly, this Court reviews IBM's actions, cited by Rosemary in her complaint, to determine if they were arbitrary and capricious. As stated above, the Court will also consider whether IBM's conduct breached its fiduciary duty.

## I.      Rejecting the New Designation of Beneficiary Form

The instructions on the new Designation of Beneficiary Form that Patrick received after his June marriage to Rosemary state, in all capital letters, "INDICATE WHETHER THE DESIGNATION IS FOR IBM GROUP LIFE ONLY, TRAVEL ACCIDENT ONLY, OR BOTH POLICIES." (Def.'s Ex. 8, Designation Form, RG 000001.) The form also states the audit procedures performed by HRSC after receipt of the form, which include an audit of the "[i]ndication of [b]eneficiary for one or both policies" and "signature of witness," and instruct HRSC personnel to "[r]eturn card to employee if it doesn't pass audit." (*Id.*) Changes in the designation of the beneficiaries of a policy are "effective when the completed form is received and processed by the HRSC." (Pl.'s Ex. 4, Designating a Beneficiary Explanation, IBM 000089; *see* Def.'s Ex. 8, Designation Form, RG 000001 (stating "[s]ignature of authorized IBM Representative is required").) Patrick's form was rejected by this routine internal audit because his own signature date was unclear, his witness' date of signature did not match Patrick's signature date, and perhaps most importantly, no box had been checked indicating the plan for which Patrick was trying to change the beneficiary. IBM's HRSC mailed this rejected form and another new form, along with an audit checklist detailing the reasons for the rejection, to Patrick's home the day after receiving and rejecting the form he had submitted. The internal

12

auditing procedures that resulted in the rejection of the new Designation of Beneficiary Form

Patrick had submitted were not arbitrary or capricious. *See, e.g., Jones v. Local 705 Int'l Bhd. of*

*Teamsters Pension Fund*, No. 00 C 1157, 2002 U.S. Dist LEXIS 7715, at *10 (N.D. Ill. Apr. 25,

2002) (Pension Fund's actions were not arbitrary and capricious where it required proof of age in

certain forms, and deceased did not provide that proof). These actions were the routine

procedures of a human resources service center that receives, on average, between 1,000 and

4,000 Designation of Beneficiary Forms a month. (Def.'s LR 56.1(a)(3) ¶ 59.) At the time

Patrick sent in the new Designation of Beneficiary Form, he was on leave for a medical

disability and so eligible for only the group life insurance and not travel accident insurance.

Rosemary essentially claims that because Patrick was eligible for group life insurance only at the

time he mailed in his form, he should not have been required to check a box because IBM should

have known or had reason to know that as he was only eligible for one plan on the form. This

line of reasoning is undermined by the sheer size of the IBM corporation and the amount of

Designation of Beneficiary Forms processed by its HRSC in a given month. As the procedures

in place to handle this volume of forms could not be characterized as random or unpredictable,

the ultimate rejection of the form, which failed to conform to the explicit instructions for

completion, cannot itself be labeled arbitrary or capricious.

IBM cannot be said to have breached its fiduciary duty either because it was properly

managing and administering the Plan in this instance. Patrick first requested new Designation of

Beneficiary Forms for his group life insurance policy on June 6. They were mailed by IBM's

HRSC the following day. The instructions on this form state, in all capital letters no less, that

the employee must indicate whether the designation of the beneficiary is for the group life

insurance policy only, travel accident policy only, or both policies. The form states that changes

13

are effective only when the form is received and processed by IBM's HRSC and that forms which fail to pass processing will be returned to the employee. When the form Patrick sent in was rejected in this processing, it was promptly returned to him along with a checklist detailing the reasons for the rejection and a new form for correct completion the very next day. It cannot fairly be said that IBM was not acting in the interest of plan participants and beneficiaries when it so promptly alerted Patrick of the problems with the Designation of Beneficiary Form that had been mailed to the HRSC by his attorney Bell.

## II.     Failing To Forward Notice of Rejection to Bell or Patrick at His Last Known Hospital Address

Rosemary makes much of the fact that when IBM returned the rejected Designation of Beneficiary Form, it did so to Patrick himself, rather than Bell as Bell had requested in his cover letter accompanying the new Designation of Beneficiary Form. She does not make as much of the fact that IBM failed to send Patrick the rejected form and associated materials to him at his last known hospital address. In addition to the fact that IBM was executing routine procedures in mailing the forms and checklist to Patrick at his home, the undisputed facts make both of Rosemary's arguments of no consequence. Patrick returned home on August 30, the day after IBM's HRSC had placed the rejected form, new form, and explanatory audit checklist in the mail to him. He received them and thus, the fact that they were not mailed to him at the hospital seems not only reasonable, but fortuitous. Upon receiving them, he discussed them on three consecutive days with Bell and so, again, the fact that the forms and checklist were not mailed to Bell seems of little ultimate consequence. Furthermore, although Bell could not remember the content of any of these conversations, the descriptions of them on his time sheets are more

14

helpful and at least somewhat telling: "IBM forms," "review . . . IBM follow-up." (Def.'s LR 56.1(a)(3) ¶ 68(a)-(d).) No further action was taken by anyone, however, until September 20 and in that case, it was Rosemary who acted. Here, the Court notes that Rosemary brought a malpractice suit against Bell on the same day that she filed this suit against IBM, alleging that as a result of Bell's failures, the group life insurance policy benefits were mistakenly paid to Jennifer and Jeffrey, rather than Rosemary. In doing so, she seems to concede, implicitly, that it was not IBM's alleged failures that are to blame for the group life insurance policy proceeds being paid to Jennifer and Jeffrey, but rather the alleged incompetence of an attorney who has admitted in a deposition that he sometimes deletes voice mail messages without listening to them. In any case, regardless of that fact, IBM did not act arbitrarily and capriciously in not forwarding the rejected form to Bell or, in the alternative, to Patrick's last known hospital address, and the fact that the forms and checklist were mailed to Patrick at home is ultimately of little consequence because Patrick did in fact receive them and apparently spoke to Bell about them.

Similarly, IBM did not breach its fiduciary duty under ERISA in returning the rejected Designation of Beneficiary Form to Patrick himself at his home address, rather than at his hospital address or to his attorney. IBM acted promptly in returning the rejected form and explanatory checklist to Patrick at home and in any case again, whether the forms were mailed to Patrick at his last known hospital address or to his attorney is ultimately of no import since Patrick did in fact receive the rejected form and accompanying checklist.

### III. Failing To Advise Prudential of Rejected Designation of Beneficiary Form, Advising Prudential To Disburse the Group Life Insurance Policy Proceeds to Jennifer and Jeffrey, & Allowing Prudential To Disburse Proceeds

It is undisputed that after IBM mailed the rejected form, a new form, an audit checklist. and an explanation as to why the originally submitted form had been rejected on August 29, IBM was not contacted again by anyone in or connected to the Gassner family until September 20, when Rosemary called the HRSC to inform it of Patrick's death. HRSC then mailed a Benefits Statement to Rosemary only, explaining who the beneficiaries of Patrick's benefits were and requesting additional information in order to process the disbursement of these benefits. It was next contacted, by Jennifer, on October 2 when it received the additional information necessary to process the life insurance benefits claim. Rosemary, apparently, would have IBM extrapolate her late husband's intentions and the feud between herself and step-daughter from an incomplete form purportedly attempting to change the beneficiaries of her late husband's group life insurance policy from his children to her. According to Rosemary, had IBM so extrapolated, it would have been acting reasonably and prudently. The Court disagrees. If such were the case, Rosemary would have had no reason, upon receiving the Benefits Statement, to have asked Bell to contact IBM regarding the Benefits Statement because IBM would have already known. In fact, IBM did not know anything except that Jennifer and Jeffrey were the beneficiaries on file and that a form to change this circumstance had been rejected and, for whatever reason, never corrected after IBM sent the rejected form and checklist on August 30, the day after IBM had received the form from Patrick. Accordingly, it acted neither arbitrarily nor capriciously in advising Prudential to disburse Patrick's group life insurance benefits to Jennifer and Jeffrey.

Nor did IBM breach its fiduciary duty in advising Prudential to disburse these monies to Jennifer and Jeffrey. ERISA requires fiduciaries to act solely in the interest of the plan

16

participant and beneficiaries which, to the best of IBM's knowledge in this case with regard to the plan at issue, were Patrick, Jennifer, and Jeffrey. Rosemary was not the named beneficiary of Patrick's group life insurance policy, and IBM was entirely unaware of the disagreement between Rosemary and Jennifer regarding the appropriate beneficiary. Rosemary, it seems, would ask the Court to hold that the new Designation of Beneficiary Form sent to the HRSC, even if it was incomplete, indicated Patrick's intentions sufficiently such that no further follow-up by her, or anyone on her behalf, was required. IBM's failure to make such an inference was neither arbitrary or capricious conduct nor a breach of fiduciary duty. It may very well be that Patrick wanted Rosemary named as the beneficiary of his life insurance policy, but given the undisputed facts in the record and reading all disputed facts in Rosemary's favor, she has failed to establish a genuine issue as to a material fact regarding whether IBM breached its fiduciary duty when it did not advise Prudential of the rejected designation of beneficiary form, advised Prudential to disburse the group life insurance policy proceeds to Jennifer and Jeffrey, and allowed Prudential to disburse the proceeds.

## V.     Failing To Provide Plan Information When Requested

ERISA provides that plan administrators may be fined for failing to provide beneficiaries information when requested. 29 U.S.C. § 1132(c); 29 U.S.C. § 1132(a)(1)(A). Sections 1024(b)(4) and 1025(a) require administrators to furnish certain information, namely summary plan descriptions, annual reports, and total benefits accrued, only upon *written* request. "[A]s a matter of law, a party cannot claim a breach of fiduciary duty based on a failure to disclose when the statutory requirements for disclosure are met." *Zych v. Goodheart-Willcox Co., Inc.*, No. 94 C 6943, 1995 WL 417539, at *6 (N.D. Ill. July 12, 1995).

Rosemary's Amended Complaint alleged four requests for information to which IBM allegedly failed to respond: (1) the September 20, 2000 telephoned request that IBM pay the proceeds of Patrick's Group Life Insurance plan to Rosemary; (2) the October 3, 2000 telephoned request that IBM pay the proceeds of Patrick's Group Life Insurance plan to Rosemary; (3) the October 11, 2000 letter from Bell asking whether IBM intended to disburse any of the proceeds of Patrick's group life insurance policy; and (4) the January 2001 request via telephone for information regarding the plan's benefits. The statements of fact before the Court on summary judgment, however, fail to establish that on September 20, 2000 Rosemary requested that IBM pay the proceeds of Patrick's Group Life Insurance plan to her and merely show that on that date she informed IBM's HRSC of Patrick's death. (Def.'s LR 56.1(a)(3) ¶ 71.) The statements of fact also fail to establish that Rosemary requested such proceeds on October 3, 2000 and merely state that neither party noted anything about the beneficiaries being incorrect at the time of the conversation. (*Id.* ¶ 99.) The statements of fact are devoid of any facts relating to a January 2001 telephone request for information.

Even if such alleged failures to respond were properly supported by the record, which they are not, the fact that three of these requests were made by telephone is fatal. *See, e.g., Anderson v. Mortell*, 722 F. Supp. 462, 473 (N.D. Ill. 1989) ("[I]t is undisputed that plaintiffs did not make any written request upon the Plan administrator for the documents they now claim they had a right to review. Therefore, plaintiffs cannot recover . . . ."); *Kamler v. H/N Telecomm. Serv., Inc.*, No. 00 C 4024, 2001 U.S. Dist. LEXIS 21328, at *25 (N.D. Ill. June 25, 2001) ("A participant must send a written request to the plan administrator in order to trigger its disclosure obligations.").

The other request for information--the letter from Bell asking whether IBM intended to disburse the proceeds of the policy--can only be loosely described as a request for information and certainly is not the kind of information ERISA mandates plan administrators provide, and thus Rosemary's claim falters here as well. *See, e.g., Baxter v. Northwest Airlines, Inc.*, No. 96 C 2060, 1998 U.S. Dist. LEXIS 14358, at *14 (N.D. Ill. Sept. 3, 1998) (citing *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 621-23 (7th Cir. 1987)) ("[A] demand for benefits does not constitute a 'request' for information that gives rise to liability . . . should the administrator fail to respond.").

Further, the undisputed facts in the record show that on October 16, 2000, the IBM HRSC employee responsible for the administration of Patrick's benefits left Bell a message stating that the benefits had already been paid out to Jennifer and Jeffrey and noted that the Designation of Beneficiary Form previously submitted was invalid for the reasons stated in its August 29, 2000 communication, and IBM thus had not approved the change. (Def.'s LR 56.1(a)(3) ¶ 108.) Thus, even if the October 11 letter were sufficient to trigger IBM's obligation to respond under section 1132(c), which it was not, IBM responded within the thirty-day time limit as required under section 1132(c). Accordingly, the Court holds that Rosemary has failed to establish a triable issue as to a material fact regarding her breach of fiduciary duty claim for IBM's purported failure to respond.

## CONCLUSION

For the reasons provided in this Memorandum Opinion and Order, the Court grants IBM's Motion for Summary Judgment [63-1]. IBM is hereby dismissed as a defendant, and IBM's third-party complaint is dismissed as moot. To preserve scarce judicial resources, the Court strikes without prejudice Rosemary's motion to dismiss the first amended "counterclaim" of third-party defendants [52-1] and the third-party defendants' motion for partial summary judgment [54-1]. Given the facts and issues in this case, the Court, in its discretion to control its own docket, will first rule on Prudential Insurance Co.'s liability before addressing any claims of or against third-party defendants. Prudential's motion for summary judgment is due three weeks from the date of this opinion; Rosemary's response is due three weeks thereafter; Prudential's reply is due two weeks thereafter.

**SO ORDERED**

**ENTERED:** 9/7/04

Ronald A. Guzman

**HON. RONALD A. GUZMAN**
**United States Judge**

20